UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
DOCKET NO. 5:16-cv-00065-MOC

| KIMBERLY WADDELL PALMER | ) | |
| --- | --- | --- |
| | ) | |
| | ) | ORDER |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** is before the court on plaintiff's Motion for Judgment on the Pleadings (#11)[1] and Defendant's Motion for Summary Judgment (#13). The matter is ripe for review. Having carefully considered such motions and reviewed the pleadings, the court enters the following findings, conclusions, and Order.

### FINDINGS AND CONCLUSIONS

**I.   Administrative History**

Plaintiff applied for disability insurance benefits and Supplemental Security Income (SSI) benefits in November 2012, alleging that she became disabled on August 27, 2012. (Tr. 266, 274). Her claim was denied at the initial and reconsideration levels for review. (Tr. 175, 189, 274). Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). (Tr. 207). A hearing was held before Jane Crawford, an ALJ, on January 12, 2015, at which plaintiff

---

[1] Pursuant to the court's text-only order on July 5, 2016, plaintiff was directed to file a Motion for Summary Judgment. She filed a Motion for Judgment for Judgment on the Pleadings. Regardless of the heading, the Motion will be reviewed under the same standard as described below in Part III.

-1-

had an attorney representative present. (Tr. 66). In a January 29, 2015 written decision, the ALJ denied the plaintiff's claim. (Tr. 45, 48). Plaintiff requested review of the ALJ's decision. (Tr. 44). The request for review was denied by the Appeals Council on March 10, 2016 (Tr. 1), rendering the ALJ's decision the final decision of the Commissioner. See 20 C.F.R. § 404.981. Plaintiff has exhausted her available administrative remedies and the case is now ripe for judicial review under Section 205(g) of the Social Security Act. See 42 U.S.C. § 405(g).

## II. Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the court adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal citations omitted). Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if it was supported by substantial evidence. Hays, 907 F.2d at 1456. The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without

> remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

## IV. Substantial Evidence

### A. Introduction

The court has read the transcript of plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the relevant exhibits contained in the extensive administrative record. The issue is not whether a court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. The court finds that the ALJ's decision was supported by substantial evidence.

### B. Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title XVI pursuant to the following five-step analysis:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix

1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 416.920(a)-(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

**C. The Administrative Decision**

At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity since August 27, 2012, which was the alleged onset date of the purported disability. (Tr. 50). At step two, the ALJ found that the plaintiff had the following severe impairments: degenerative disc of the cervical spine with radiculopathy, osteoarthritis of the right knee, popliteal cyst left knee, plantar fasciitis, a history of asthma, hypertension, obesity, and major depressive disorder. (Tr. 50-51). The ALJ also noted that the plaintiff had the non-severe impairment of recurrent renal stones. (Tr. 51). At step three, the ALJ determined that the plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 51).

The ALJ concluded that the plaintiff had the residual functional capacity (RFC) to perform sedentary work, except that she would need the option to stand for a couple minutes a few times per hour. (#53). The ALJ limited the plaintiff to performing simple and routine tasks and noted that she could tolerate frequent superficial contact with co-workers and the public. (#53). The ALJ found that the plaintiff could occasionally climb ramps and stairs, balance, stoop, kneel, crawl, and crouch but could not do or work in areas in areas with excessive dust or other respiratory irritants. Id.

At step four, the ALJ found that plaintiff Palmer could not perform her past relevant work. (#56). At step five, the ALJ concluded that there were jobs that exist in significant numbers in the national economy that the plaintiff could perform, given her age, education, work experience, and RFC. (#57). Accordingly, the ALJ determined that the plaintiff had not been under a disability within the meaning of the Social Security Act, 20 C.F.R. 404.1520(g), from August 27, 2012. (#57).

**D. Discussion**

The court has closely read plaintiff's Memorandum of Law supporting her Motion for Summary Judgment (#12). Plaintiff has made the following assignments of error:

I. The ALJ erred in labeling plaintiff's recurrent kidney stones as a "non-severe" impairment

II. The ALJ failed to consider plaintiff's chronic migraine headaches as severe impairments;

III. The ALJ failed to accord appropriate weight to opinion evidence; and

IV. The ALJ erred in finding that the plaintiff had the RFC to perform sedentary work.

Plaintiff's assignments of error will be discussed *seriatim*.

### 1. Kidney Stones

Plaintiff first argues that the ALJ erred at step two in finding that plaintiff's kidney stones and migraine headaches were not disabling. A "severe" impairment is one that "significantly limits an individual's physical or mental abilities to do basic work activities." S.S.R. 96-3p. In order to be considered a "severe" impairment, the limitation must have lasted or must be expected to last for at least 12 consecutive months. See 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).

The plaintiff noted that each episode of her kidney stones does not last for 12 consecutive months. Pl. Br. (#12) at 9. The record before the ALJ, as discussed in her decision, notes that the limitation due to kidney stones was "non-severe" as she had such ailment during August and September 2013. (Tr. 51).

Plaintiff cites to several records before the alleged onset date of August 2012, (Tr. 438-442, 448-454, 458-460, 464-465, & 478-479). Rather than support the plaintiff's position, these additional records undercut her case. The plaintiff was able to work while being treated for kidney stones in the fall of 2010 and between August and September 2011.

The ALJ was provided with the extant record, including an exhibit indicating imaging for a kidney stone in August 2014 (Tr. 619-621), which may have been at the plaintiff's request as she was in the hospital after suffering a fall and hitting her head. See (Tr. 624). From the record, the ALJ concluded that the plaintiff had not "sought further *significant* medical treatment for that condition during the alleged disability period." (Tr. 51) (emphasis added).

The task before the court is not a de novo review, instead the court must answer whether the ALJ's determination was supported by substantial evidence. In reviewing the record and the

decision itself, there is substantial evidence to support the ALJ's decision that plaintiff's kidney stones were treated and resolved within a twelve-month period.

## 2. Migraine Headaches & Step Two Error Generally

The plaintiff next contends that the ALJ erred in not adequately considering her migraine headaches at step two. Plaintiff cites to her testimony at the hearing before the ALJ which noted that the plaintiff claimed to have daily headaches lasting five to six hours. (Tr. 81).

The ALJ is free to consider evidence presented at the hearing before her, including the claimant's own testimony. In her testimony (indeed on the same transcript page as plaintiff's cited reference), the plaintiff noted that she could take an Excedrin and return to her normal activities within ten to fifteen minutes. (Tr. 81). Moreover (also on the same transcript page), she noted that the migraine headaches were a symptom of the bulging disc. (Tr. 81).

Even if the ALJ failed to consider daily ten-to-fifteen minute headaches as a "severe" limitation, it does not constitute error. The court concurs with its colleague elsewhere in the state that "it is not error for an ALJ not to make a determination regarding the severity of all of a claimant's impairments where the ALJ finds the claimant has a severe impairment or combination of impairments, and the ALJ considers the omitted impairments at later steps in the sequential evaluation." Kelly v. Astrue, No. 5:08-cv-289-FL, 2009 WL 1346241, at *2 n.1 (E.D.N.C. May 12, 2009). Even if the omission of the headache analysis represented error, the impact of an error at step two is mitigated and rendered harmless where the adjudicator proceeds to step three and considers all impairments as part of the RFC analysis. See Carroll v. Colvin, No. 1:13-CV-213-RJC-DSC, 2014 WL 3729803, at *7 (W.D.N.C. June 3, 2014), report and recommendation adopted, No. 1:13-CV-213-RJC-DSC, 2014 WL 3729802 (W.D.N.C. July 28, 2014). ("Any error at step two is harmless where the adjudicator proceeds to step three").

In this case, the ALJ continued to step three. See (Tr. 51). In her RFC analysis, the ALJ discussed plaintiff's bulging disc in her neck, the source of the headaches, according to the plaintiff. (Tr. 53-54). Due in part to the documented neck problems, the ALJ adjusted her evaluation of the state medical consultant's opinion that the claimant could perform medium exertional work. Given the history of asthma and respiratory concerns, the ALJ limited the plaintiff's RFC to avoid working in environments with excessive dust, fumes, or respiratory irritants. See (Tr. 53, 55).

### 3. Opinion Evidence

Plaintiff next argues that the ALJ did not afford proper weight to the opinion evidence presented. Specifically, plaintiff contends that (a) the opinion of a treating physician, Dr. James Foushee, was not given controlling weight and (b) the ALJ improperly weighed the opinion of the state consultative examiner, Dr. Carla Duszlak. These contentions are discussed in detail below.

Plaintiff argues that Dr. Foushee's letter should be given controlling weight. Dr. James Foushee wrote an undated, one-page letter that was submitted and expressly reviewed by the ALJ. See (Tr. 701). The ALJ considered the letter at some length and afforded it little weight as it was inconsistent with the rest of the voluminous record before the ALJ. See (Tr. 55-56).

The ALJ properly weighed Dr. Foushee's letter for two reasons. First, the ALJ is expressly bound to *not* give controlling weight to treating source opinions as to the ultimate issue before the ALJ, such as Dr. Foushee's conclusion that the plaintiff was unable to return to work of any type. (Tr. 701). The ability to work, the ultimate issue in the "disability" analysis, is one reserved to the Commissioner. S.S.R. 96-5 is clear:

> treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance. Giving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make

the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.

Titles II & Xvi: Med. Source Opinions on Issues Reserved to the Comm'r, SSR 96-5P (S.S.A. July 2, 1996). Accordingly, the ALJ not giving controlling weight to Dr. Foushee was *not* error, as she was bound by S.S.R. 96-5 to avoid doing so.

Moreover, controlling weight is only merited to a treating source opinion when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 404.1527. Here, Dr. Foushee's opinion was found to be inconsistent with the other evidence in the case record. (Tr. 55-56). Accordingly, the ALJ could not afford it controlling weight.

The plaintiff also argues that the ALJ improperly weighed the opinion of the state consultative examiner, Dr. Duszlak. The plaintiff contends that the allegedly conclusory analysis would not allow the court to "undertake meaningful substantial evidence review." Pl. Br. (#12) at 12. Also, the plaintiff seeks a finding of error as the ALJ did not mention the Global Assessment of Functioning (GAF) rating that Dr. Duszlak assigned to the plaintiff. Id.

The ALJ discussed Dr. Duszlak's report at some length. See (Tr. 56). The ALJ afforded it some weight as to the examiner's findings that were consistent with the record. The ALJ afforded the findings less weight as to the limitations that were less consistent with the record.

The ALJ's detailed analysis of Dr. Duszlak's findings and her rationale in providing differing weights to portions of the examiner's findings provide far more insight to a reviewing court than that of the expert in Monroe v. Colvin, 826 F.3d 176, 191 (4th Cir. 2016). The two-sentence statement in Monroe was found to be too conclusory and frustrated meaningful

substantial evidence review. Here, the ALJ went into far greater detail. Put simply, the ALJ's treatment of the examiner's findings goes beyond conclusory boilerplate language. The ALJ's evaluation allows for substantial evidence review and does not constitute error.

The plaintiff next alleges that an alleged failure to expressly mention the GAF score means that the ALJ's decision was not based on substantial evidence. Pl. Br. (#12) at 13 ("Although ALJ Crawford discussed Dr. Duszlak's opinion, she completely failed to mention the GAF score. Therefore, this decision is not based on substantial evidence."). The ALJ did not fail to mention the GAF score. The GAF score is expressly mentioned in the ALJ's decision, and the ALJ provided an explanation of what a GAF score of 50 would mean for the plaintiff's impairment. The ALJ wrote, "The examiner…assessed the claimant with a GAF (global assessment of functioning) score of 50, indicating serious, bordering on moderate, impairment in mental functioning." (Tr. 55). The ALJ then tied the consultative expert's assessment of the GAF score to the RFC limitations. The ALJ noted that limitations to simple, routine tasks and superficial contact with co-workers or the public should accommodate claimant's mental health limitations. See (Tr. 55).

### 4. Sedentary Work

Plaintiff argues that the ALJ erred in finding that Ms. Palmer had the RFC to perform sedentary work. The court reviews this allegation of error not for the ultimate conclusion—that Ms. Palmer could perform sedentary work—but instead whether the ALJ had substantial evidence upon which to make this determination. The court finds that the ALJ had substantial evidence to make such an assessment.

The plaintiff alleges that the ALJ did not take into account plaintiff's physical limitations in assessing her RFC. In particular, plaintiff alleged that she would need to elevate her legs for up to six hours daily, that she could only sit for thirty minutes and stand for up to ten minutes, and that she had to lie down for four-to-five hours daily. Pl. Br. 14 (citing Tr. 77-79). The ALJ expressly considered such allegations and found that the severity that the plaintiff alleged was not supported by the record. (Tr. 53-54). Citing to the objective record, the ALJ detailed how the findings from the record were at odds with the severity of the impairments detailed by the plaintiff. See (Tr. 54, 669-75, 676-77, 678-89, 702-706). The ALJ also noted that some treatment provided near-immediate relief to the plaintiff's knee. (Tr. 54, 534). Noting plaintiff's testimony that she could sit for up to thirty minutes at a time, the ALJ set forward an RFC that allowed plaintiff to stand for a few times per hour. See (Tr. 53-54).

With regard to mental health limitations, the plaintiff alleges that the ALJ failed to account for these limitations in setting the RFC. The plaintiff's brief cited her testimony that the plaintiff's depression caused her social interaction, concentration, and memory problems and sometimes left her to solitude and crying spells. Pl. Br. (#12) at 14 (citing Tr. 81-83).

The ALJ's decision explicitly mentioned the plaintiff's alleged crying spells and difficulty concentrating. (Tr. 54). The ALJ noted that the plaintiff had provided "very little evidence" for her mental health condition, citing her hearing testimony that she had received a couple months of treatment in early 2014 but noting that there were no supporting records of that treatment. (Tr. 55). Notably, the ALJ assessed the entire record and noted that "the record does not indicate the claimant sought significant mental health treatment for her depression during the alleged disability period, and her treatment notes from her other treating sources do not mention significant mental health symptoms." (Tr. 54). Even so, the ALJ assessed the RFC to accommodate alleged

-11-

impairments pursuant to her depression and limited the plaintiff to routine, simple tasks and superficial contact with the public and her co-workers. (Tr. 55).

While the ALJ's express discussed the plaintiff's alleged limitations in concentration and considered it in the RFC, the plaintiff argues that the ALJ did not properly account for the limitations in the plaintiff's concentration, persistence, or pace. Pl. Br. (#12) at 14-15. In this case, the ALJ determined that the plaintiff had "moderate difficulties" in concentration, persistence, or pace. (Tr. 52). The ALJ cited to Dr. Duszlak's report that plaintiff had a hard time focusing, but could perform recall and mathematical tasks. (Tr. 52, 535-42). The ALJ also discussed Dr. Duszlak's report and findings with express regard to plaintiff's ability to recall digits, accept instruction, and perform simple, routine tasks. (Tr. 56).

The plaintiff cites to the Fourth Circuit's ruling in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). *Inter alia*, the Mascio court raised concern when ALJ determinations of moderate limitations in concentration, persistence, or pace at step three were not translated into a limitation in the RFC without any discussion. Id., at 638 ("Perhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity."). Mascio is distinguishable.

In Mascio, the ALJ provided no explanation of whether moderate difficulties in concentration, persistence, or pace could translate to the RFC. Id. at 638 ("But because the ALJ here gave no explanation, a remand is in order."). In this case, the ALJ acknowledged plaintiff's issues with mental functioning and crafted an accommodation thereupon. The court finds the ALJ fully accommodated the plaintiff's alleged mental impairment by including an appropriate limitation, and that Mascio required no more.

In this case, the ALJ cited to plaintiff's own report that she sometimes had a hard time focusing in support of the moderate difficulty finding. (Tr. 52). In assessing the plaintiff's RFC, the ALJ expressly mentioned plaintiff's reported "crying spells and difficulty concentrating." (Tr. 54). The ALJ discussed the GAF score of 50 and rating of "serious, bordering on moderate, impairment in mental functioning. (Tr. 55). Moreover, the ALJ gave great weight to state psychological consultants. (Tr. 102-117,136-152). *Inter alia*, these cited reports echoed that the plaintiff reported problems focusing and would sometimes "zone out." (Tr. 108). Also, the ALJ gave some weight to Dr. Duszlak's report that plaintiff may have a hard time with detailed tasks (Tr. 56, 535-42). Dr. Dr. Duszlak's assessment also noted that the plaintiff successfully completed concentration tasks, but reported that she had a "hard time focusing." (Tr. 539, 540). With regard to plaintiff's own reports, the ALJ detailed that a lack of significant mental health treatment suggested that the severity of the mental limitations were not to the degree alleged. (Tr. 54-55). Even so, she determined that the RFC should be assessed as to accommodate the plaintiff's mental limitation, namely her depression. (Tr. 55).

The court is asked whether the ALJ had substantial evidence upon which to base her determination. The court is not "left to guess" at how the ALJ arrived at her determinations of the plaintiff's RFC. See Mascio, at 637. The ALJ in this case made a determination based on substantial evidence and provided ample record of how and why she took into account the plaintiff's alleged mental limitations and expressly cited the objective record and plaintiff's reports of difficulty in concentration. The extensive discussion here was far more than the comparable boilerplate assessment in Mascio.

### E. Conclusion

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, plaintiff's motion and brief, the Commissioner's responsive pleading, and plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. <u>See</u> <u>Richardson v. Perales</u>, <u>supra</u>; <u>Hays v. Sullivan</u>, <u>supra</u>. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," <u>Richardson v. Perales</u>, <u>supra</u> at 401, plaintiff's Motion for Judgment on the Pleadings will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

### ORDER

**IT IS, THEREFORE, ORDERED** that:

(1) the decision of the Commissioner, denying the relief sought by plaintiff, is **AFFIRMED;**

(2) plaintiff's Motion for Judgment on the Pleadings (#11) is **DENIED;**

(3) the Commissioner's Motion for Summary Judgment (#13) is **GRANTED;** and

(4) this action is **DISMISSED.**

The Clerk of Court is directed to enter Judgment pursuant to this Order.

Signed: December 13, 2016

Max O. Cogburn Jr
United States District Judge